**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Keith Edward CARR, Defendant and Appellant.**

**Cr. No. 942.**

Supreme Court of North Dakota.

March 21, 1984.

Robert G. Hoy, States Atty., argued, Fargo, for plaintiff and appellee.

Gackle, Johnson & Rodenburg, Fargo, for defendant and appellant; argued by Bruce D. Johnson, Fargo.

PEDERSON, Justice.

This is an appeal by the defendant, Keith Edward Carr, from a judgment of conviction, based upon a jury verdict, for the crime of gross sexual imposition under Section 12.1–20–03, NDCC. We affirm.

Carr has raised the following issues on appeal:

(1) Whether or not there is sufficient evidence to sustain the jury verdict.

(2) Whether or not the trial court erred in refusing to grant Carr's motion for a mistrial based upon an alleged improper question directed to Carr during the prosecutor's cross-examination.

(3) Whether or not the defendant was denied a fair trial because he did not have effective assistance of counsel.

(4) Whether or not the trial court erred in failing to intervene, *sua sponte*, to protect Carr's rights during the prosecutor's final argument.

It is undisputed that prior to September 25, 1982, defendant Carr and the complainant (herein referred to as Patricia) had not met. On that evening, Patricia was with a group of women friends at Cactus Jack's Saloon in Fargo, one of whom, recognizing Carr as a casual acquaintance, conversed and danced with Carr. Later that evening, Carr and a male companion appeared at Patricia's apartment where a group of her friends were visiting. Patricia then received a call from a friend of hers, Bob Nelson, who issued a general invitation for the people at her apartment to come to his apartment, a couple of blocks away, for a party. The group, including Carr, then left Patricia's apartment and went to Nelson's party. When that party terminated, Patricia accepted Carr's offer of a ride the short distance back to her apartment. When they arrived at her apartment, Patricia went in alone and began getting ready for bed. Patricia's young daughter and a girlfriend were also in the apartment, sleeping in a bedroom located next to Patricia's.

It is undisputed that shortly thereafter Carr entered Patricia's apartment, and they had sexual intercourse. Their versions of how that occurred are in complete contrast. Patricia asserts that when Carr rang the security buzzer she let him into the building and then into her apartment because he said that he was Al, a friend of Patricia's, who had been at the Nelson party and whom Patricia thought might be having car trouble or some other problem. Patricia testified that when she opened the door Carr came in uninvited, and, in spite of her protests that he leave, pulled her to the living room floor by the hair and forced her to submit to intercourse with him. Patricia testified that during the incident Carr slapped her face and grabbed her neck and that, although she struggled and bit Carr,

she did not cry out because she was frightened for herself and for her daughter and friend, who were sleeping in the next room. Patricia testified that after Carr forced her to submit to sexual intercourse and other sexual acts he insisted that she lay with him on the couch while he rested; that while on the couch Carr held her hair and when she attempted to get up he would force her to remain by pulling it. Patricia testified that Carr finally left her apartment on Sunday morning before the girls awakened.

Carr testified that after taking Patricia home from the party he later returned to her apartment where he was invited in by Patricia and, after conversing together over drinks, they engaged in mutually consensual sexual intercourse.

On appeal, Carr asserts that there was insufficient evidence to sustain the jury's verdict finding him guilty of gross sexual imposition. We disagree.

■ When there is a challenge of the sufficiency of the evidence to sustain a conviction, we do not weigh conflicting evidence nor do we judge the credibility of witnesses; instead, we look only to the evidence most favorable to the verdict to determine if there is substantial evidence to warrant a conviction. *State v. Manke*, 328 N.W.2d 799 (N.D.1982).

■ There is evidence in the record from which the jury could have found that in spite of Patricia's protestations that Carr leave her apartment he forcibly pulled her to the floor, slapped her face, grabbed her neck, and engaged in sexual intercourse and other sexual acts with Patricia against her will and without her consent. There is evidence from which the jury could have also concluded that Patricia initially struggled against Carr's attack, biting him as part of her resistance, but that she finally submitted and did not cry out because she feared for her life and that of her young daughter and friend who were sleeping in the bedroom nearby. Consequently, we conclude that there was substantial evidence upon which the jury could have

found, as it did, that Carr was guilty of gross sexual imposition.

Carr asserts that the trial court erred in refusing to grant a mistrial when the prosecutor, during his cross-examination of Carr, asked whether others had called him by the nickname "Psycho." The trial court sustained an objection to the question and issued a cautionary instruction for the jury to disregard it.

■ It is well-settled that the granting of a mistrial is an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings of the trial which makes it evident that further proceedings would be productive of manifest injustice. *Holten v. Amsden*, 161 N.W.2d 478 (N.D.1968); *Thornburg v. Perleberg*, 158 N.W.2d 188 (N.D.1968); *Larson v. Meyer*, 135 N.W.2d 145 (N.D.1965); *Hoffer v. Burd*, 78 N.D. 278, 49 N.W.2d 282 (1951).

Throughout the trial in this case, various witnesses described Carr's appearance during the evening of the alleged crime in such terms as "weird", "crazy", and "mad man." Explaining her feelings of fear, Patricia testified that during the incident Carr acted "crazy" and "looked like a mad man. I mean, his eyes looked horrible. They looked like they were going to pop out. He looked horrible. It was very—I've never seen such an ugly look in all my life."

■ During oral argument in this Court, the prosecutor asserted that he had reason to believe that others had referred to Carr by the nickname "Psycho" and that his reason for questioning Carr with regard to the matter was to bolster the testimony and credibility of Patricia and other witnesses who used similar descriptive terms to describe their impression of Carr's appearance on the evening and during the commission of the alleged crime. The trial court, believing that the question was improper, sustained an objection to it and issued a cautionary instruction. We conclude that under the circumstances the trial court's denial of Carr's motion for a mistrial was proper. The incident was not

productive of manifest injustice, and it did not warrant a mistrial.

Carr asserts that he was denied effective assistance of counsel during the trial because his defense counsel did not deliver an opening statement and did not object to allegedly improper remarks made by the prosecutor during opening and closing argument or to allegedly improper prejudicial characterizations of the defendant by various witnesses.

The defendant's right to effective counsel does not mean a right to errorless counsel nor to counsel judged effective by hindsight, but rather to counsel rendering reasonably effective assistance. *State v. Mehralian*, 301 N.W.2d 409 (N.D.1981); *State v. McKay*, 234 N.W.2d 853 (N.D. 1975). Defense counsel in a criminal case is presumed to be competent and the party alleging inadequacy of defense counsel has the burden of overcoming the presumption. *State v. Mehralian, supra.* In reviewing the allegation of ineffective assistance of counsel in this case, the following statements of this Court in *State v. Motsko*, 261 N.W.2d 860 (N.D.1978), are relevant:

"It is easy for new counsel on appeal (or for an appellate judge, for that matter) to go through a transcript and find matters that could have been explored further, questions that could have been asked but were not, questions that were asked that should not have been asked, objections that could have been made that were not, and witnesses who could have been called but were not or witnesses who would have been better left uncalled. Hindsight is perfect and criticism is easy. But the lawyer engaged in a trial, who has made an investigation of the facts and has talked to the witnesses, may have his own reasons and they may be very good reasons for not asking a question or making an objection or calling a witness.

\*   \*   \*   \*   \*   \*

"[I]t is not our function to allow second-guesses on trial strategy...." 261 N.W.2d at 863–864.

Carr was represented at the trial court level by an attorney other than the attorney representing him in this appeal. Upon reviewing the entire record of the trial proceedings, we conclude that Carr's trial counsel provided effective and competent assistance to Carr in defending the charges brought against him. He provided quality assistance in presenting Carr's defense and in cross-examining the state's witnesses. Upon reviewing the written transcript of the proceedings, it appears that the closing argument delivered by Carr's trial counsel was not only adequate, but constituted a skilled and artful advocacy in Carr's defense. We conclude that Carr has not met his burden of demonstrating that he was denied effective assistance of counsel.

Carr also asserts on appeal that the trial court erred when it did not, on its own initiative, intervene to protect the defendant's rights during the prosecutor's final argument. The scope and substance of the opening and closing arguments rest largely in the sound discretion of the trial court, and an appellate court will not reverse a conviction on the ground that an argument to the jury was prejudicial unless there was a clear abuse of the trial court's discretion in controlling the arguments. *See, State v. Skjonsby*, 319 N.W.2d 764 (N.D.1982); *State v. Flohr*, 310 N.W.2d 735 (N.D.1981). Although Carr asserts that the prosecutor improperly asked the jurors, during final argument, to place themselves "in the shoes" of the victim, we do not believe that assertion accurately describes any statement made by the prosecutor during his final argument. Having reviewed the closing arguments of both the prosecutor and defense counsel, we conclude that the trial court did not abuse its discretion by failing to intervene, on its own accord, in those statements.

The interests of justice require that the defendant in a criminal action receive a fair trial, not a perfect trial. *State v. Skjonsby*, 319 N.W.2d 764, 793 (N.D.

1982). Carr received a fair trial. The judgment of conviction is affirmed.

ERICKSTAD, C.J., and GIERKE, SAND and VANDE WALLE, JJ., concur.